The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right, we're prepared to hear our first case and Miss McAllister, whenever you're ready, we'd be pleased to hear from you. Thank you, Your Honor. Your Honors, and may it please the Court. For generations, the Supreme Court has recognized that it is parents who have the fundamental constitutional right to make critical decisions regarding the health, safety and welfare of their children. And as recently as 2020, schools recognize the primacy of parents as decision makers, when, during the COVID pandemic, they sent their children home to the parents to make the decisions necessary during that time. But Mrs. Blair discovered educators have now determined that they and the child have the right to make these critical decisions without parental knowledge or consent, when the decisions involve a troubled child who says she identifies as something other than her sex. Only hours before her 14-year-old daughter, Sage, ran away for fear of the unaddressed threats of harm from her classmates, Mrs. Blair learned from Sage that school officials had been treating her as a boy and directed her to use the boy's bathroom, where she was sexually assaulted and threatened. Running away from the unaddressed threats at school led Sage to be abducted and sex-trafficked. When Mrs. Blair sought to vindicate her fundamental rights in the district court, she was turned away when the district court devised its own version of the right issue and concluded that district officials were entitled to qualified immunity because that newly devised right wasn't clearly established. The court also improperly dismissed Sage's Title IX claim when it concluded that secret transitioning, interrogation by law enforcement without her parents present, and concealing from parents the sexual harassment and assaults in the restroom were not sufficient to allege deliberate indifference. Finally, the court improperly dismissed claims against... The school board was trying to protect the wishes and privacy of the child. Yes, Your Honor, that is what they said. Well, I mean, I don't know why we wouldn't credit that. I mean, the child here did not want the parents to be notified, and should the school board just have overrun the child's wishes? I mean, the school board is in a bind here. It's caught between two family members, but I think they're trying to respect the wishes of this particular student, trying to respect her privacy. Are they not? That is what they state, Your Honor, but looking at it in context, this needs to be addressed in context with everything that the school counselors and staff knew about this particular student. In this particular student, they knew, had a history of mental health issues, and she had just been psychiatrically treated in a residential facility weeks before starting school, and all that information was available to them, and they knew that that was a problem with this child, and they initiated... But you're trying to assert a substantive due process right to this information, are you not? Yes, Mrs. Blair. All I'm saying is that the Supreme Court has been very leery of creating a lot of substantive due process rights, and this would land up there that we created some substantive due process right on the part of parents to certain kinds of information. This would be a very hard thing for the Supreme Court to accept. Well, respectfully, Your Honor, this is not a new expanded version of substantive due process. The allegations of the complaint that Mrs. Blair made, not the way the district court rewrote them, is squarely within... If you want to consider the context, the school board here is caught in a very difficult situation, and on the one hand, they want to respect the privacy rights of the child. I understand what you say about the rights of parents, but it's hard to know, if you're a school administrator, if they had disclosed the sexual orientation or the gender preference of the child, that might well... Against the child's wishes, that might well have given rise to another lawsuit. And so the school board is betwixt in between. Well, not really, Your Honor, because this is a 14-year-old minor child who has mental health issues, and under troxel and parum, so long as the parent is fit, the parent has the fundamental right to make these kinds of decisions. And there's no allegation, there was no allegation, is no allegation that Mrs. Blair was in any way unfit, and if there was an allegation that she was unfit, if they believe that, they're mandated reporters. If the child wished the information disclosed to the parents, why didn't this child himself or herself make the disclosure? Why is it the school board's obligation as opposed to having that the subject of a family discussion? Because in this situation, again, with the child and the condition of the child, and they already have in place in all schools, and particularly this one, that the child can't walk into the nurse's office and say, I want you to give me a Tylenol, but don't tell my mom you're giving me the Tylenol. She has to get permission, the nurse does, from the parent. So there are all kinds of situations in school where, whether the children like it or not, the parents are to be told and are to either consent or not, but they're there to be told before things occur that affect the child's mental health, health, safety, etc. The school here told this young girl who already had mental illness and who they know had been sexually harassed on the bus to start using the boys' bathroom. The girl didn't ask for that and would not have done that had not the counselor said, you need to use the boys' bathroom. And she continued to have her use the boys' bathroom for two weeks, even though they knew the child had already been sexually assaulted and threatened and harmed by male classmates. And so at some point, the child's wishes need to... Excuse me, Judge Gregory had a question. Oh, I'm sorry. I just wondered why you almost cabin in your case to, this is not an informational case. It starts that way. It's not just about information informing the parent. It's sending a child with a mental history of problems who's already been sexually assaulted. I'm reading the pleadings because this is who we are. This was a 12B6. This is not summary judgment. This is not discovery. Correct. She's been sexually assaulted, and you said, go in the boys' bathroom. Exactly. Go in there. And then when she makes complaints about sexual assault, you call the police and then browbeat it back. You know if you accuse these boys, they can sue you. Exactly, Your Honor. This is a 14-year-old girl. Forget about the transgender aspect of it. This is protecting a child. Exactly, Your Honor. I mean, you also brought, of course, a Title IX claim based on what Your Honor said. Because they also did not tell the parent that she had been sexually harassed and threatened on the bus and in the bathrooms. The only way that mom found out about that was when the daughter herself finally said something because she had gotten no help from the school. And the school had not done anything to help her, and she still had these boys threatening her with all kinds of horrors. And so, again, the school just let that happen. And, again, when she was brought in, the sheriff's deputy comes in, the SRO, and doesn't tell the parents and starts interrogating this young girl, who they know has a mental health issue, who they know has been assaulted, and try to blame it on her. And, again, they don't tell the mother about this. They didn't have a problem with calling the police, though. They didn't have a problem with calling. No. Right. And getting the police involved, but not the parent. Not the parent. And so, really, what this is, it's not solely the gender identity issue. It's the issue of the parent not being properly notified of issues that are very significant regarding her child, that her child is using the boys' bathroom, and the boys are, no surprise, mistreating her. And the girls didn't want her in their bathroom, right? Correct. Early on, the girls said because Sage, she had short hair. She was wearing T-shirts and shorts. And so they just thought, you know, I think she's a boy. They were uncomfortable. But, once again, the adults, the authority figures, told this young girl. And, you know, this young girl, she's 5'1", and 100 pounds soaking wet. There are a lot of things that you're saying about this, but don't they go rather far afield from the basic claim here, which is that the parent is asserting a substantive due process right to be notified of a child's gender orientation and is asserting a substantive due process right to such notification against the child's wishes. And I don't know where the school district would have been informed that it had any such duty. But it seems to me the question is a narrow one. It doesn't involve general treatment of this or that or the other. It involves whether a heretofore unannounced right of substantive due process right of parents to be notified against the child's wishes of the child's gender orientation. And that's going to bring up all sorts of litigation because school districts are not going to be aware of exactly when the duty to notify kicks in or when they have transgressed a child's wishes to such an extent that the child's attorney and others are going to be involved. And I don't understand why this kind of thing has to be resolved through litigation as opposed to the particular families involved and the school boards involved and all the rest. It was always open to the child to tell the parents. Right. But again, Your Honor, looking in the context, this child had significant trauma, significant mental health issues. She'd been already sexually harassed by other students. That's a different issue from what's before us now because if there was that kind of sexual harassment or whatever, that's a different case. What's being asserted here as a matter of constitutional law is the right of a parent to be notified against the child's wishes of a child's gender orientation. And I don't know where school boards were aware of that kind of duty and I don't know when they are supposed to know that the duty kicks in. And if it applies to notification of gender orientation, does the duty apply to this other subject and this subject and this subject? Is there a substantive due process right to be notified of A, B, C, D, and E or just this one matter? There's so many questions that come up and make it a very difficult position for a school to be in, which is to inject itself into the middle of something that is a family dynamic. Well, yes, Your Honor, but we have the Parham case from the Supreme Court, which was similar, where the children did bring a lawsuit because the parents had approved them being committed to mental health. You cited Parham earlier and I think you cited Troxell. Those cases are a little different because there is already a decision that has been communicated to the school and the school overturns the decision of the parents. Whereas here, there's no decision or there's no communication to the school or the school district from the parent that says, this child cannot do this or my child cannot be identified in this way. Because in those cases, it seems to be like a direct interference with the parent's wishes. Whereas here, I'm guessing they're going to say, we didn't get anything that said that we were not supposed to do this from the parent. Well, I would think that professionals would not need to be told that they should not send a small girl into the boy's bathroom just because she said she might identify as a boy. She didn't ask for that. They told her that. And Troxell, of course, didn't deal with schools. Troxell dealt with a law that disregarded the parent's right to direct the upbringing of their child. That's the same thing we're saying here. Mrs. Blair had the right to do this and under Parham, they have the right to make decisions for their minor children. The bathroom cases are different here and the use of the nurse's bathroom was an attempt to respect our previous decisions on this. What we have here is a narrow question of whether we're going to create a new substantive due process right on the part of parents to be notified of this and that and the rest. And what we're doing is we are inserting school boards into the middle of a parent's dynamic when the school board was trying to protect, and that's a reasonable decision, to protect the interest, openly expressed interest of the child that the parent not be notified. And the school boards were trying, the school board was trying to do its best to respect that child's, because the child has a, if the child could well have been very fearful of what was going to happen in that home if her gender or her preference had been told. And that's a, I think we're having courts step into something that is presumptively private between parent and child and also the school board and something that might be best resolved without the need for litigation and constitutional rights, substantive due process rights that the Supreme Court is not going to go along with. Your Honor, my time has expired. May I respond to your... Why don't you reserve some for rebuttal because I think you have some for rebuttal. I do have time for rebuttal, yes, Your Honor. All right, well we'll be glad to hear from you then, okay? Thank you, Your Honor. Thank you. Ms. York. Good morning, Your Honors, and may it please the court, Melissa York here on behalf of Appalese Appomattox County School Board Superintendent Dr. Annette Bennett and Counselor Dena Olson. The court has hit the proverbial nail on the head and that is that these rights were not clearly established and that's why the individual defendants were entitled to qualified immunity and the district court correctly granted their motion to dismiss. We're talking about the right, the alleged right of a parent to be notified that her child elected to be called by a name different than her name at birth and to use gender non-conforming pronouns at school. Over a two-week period, after which time the student ran away and obviously suffered very horrific events, but that's not the fault of the school board. The question is whether it was clearly established that these defendants would know that the actions that they were taking, taken, clearly violated a constitutional right. This court, just as recently as six weeks ago, restated the standard for a clearly established right and it has to be, cannot be done in isolation from the perceived facts of the case in which the immunity is claimed. It has to be such that an objectively reasonable officer must understand that what he's doing would violate the right. It must be established at such a high level of particularity because otherwise commonplace generalities would allow plaintiffs to game the system and convert the rule of qualified immunity into virtually unqualified liability. And that's what the appellants seek to do here. They rely upon troxel and parum and this fundamental right to the upbringing of one's child and a familial privacy, but they don't define that right within the particular context of the case. That's just one part of the case. That's what I don't understand. It's not just information. If this is not a case where it's solely, I'm suing you because you didn't tell me my child identified as transgender. If that was the case, if that was the sole case, that may be a different case, but it's always the facts that tell you what to do, not wit, but the law. We're talking about a 14-year-old child being told, and they suggest, go into the boy's bathroom. You don't think common sense has anything to do with their action being absolutely ridiculous? No, Your Honor. Answer my question. You think that's reasonable to say, oh, you identified it? Go into the boy's bathroom knowing already she's been sexually assaulted by boys. Knowing already she's been, don't go around, ask my question, knowing, because that's what they plead. Because you haven't given them a chance, the court didn't give them a chance to have discovery. This is on the pleadings, which all presumptions and inferences are for them, not you. Knowing she had been sexually assaulted by boys and tell her to go into the boy's bathroom, you think that a person with any common sense would think that's reasonable? Answer that question. Answer that question. I do, Your Honor, and I think the question is. The answer is you think that's common sense, right? Yes, based on the law that was present in 2021 when these decisions were being made. There was no law, there was no case law. Can you point to a case law that says that? Grimm v. Gloucester says that if the student is identifying as the opposite gender, then they're entitled to use the restroom of that choice. And so that, the student said, identify. But that choice, this is not even choice. You told her to go in there. She didn't make a choice. And there's no. Counsel, she did not. You've got to go by the pleadings. You can't go by, you're telling us stuff that you're concluding. I'm talking about the pleadings. They told her, oh, you should, you go into the boy's bathroom. This is not a case. You're trying to mix this with a case where transgender rights are saying, well, the school is saying, oh, we're not going to let you use the bathroom, and you're trying to. This is not that case. Well, to Judge Wilkerson. So don't try to make this case. I know what Judge Wilkerson said. I heard. I'm talking about mine. I'm asking you a question now. I understand, Your Honor. And I want to be clear. The allegations about what happened on the bus, there is no claim of sexual assault. There were claims of things being. They didn't say it was sexual assault. They said they knew before she went in there that she was sexually assaulted. If we look at the allegations as to what was alleged to have occurred on the bus, there were statements that were made to the students. I'm talking about the pleadings. And I'm looking at the complaint, Your Honor. The allegations about what was alleged to have occurred on the bus, which predates the time in which she was allegedly told to use the boys' restroom, do not indicate a sexual assault. There were profane epithets at her, threats, but she was not sexually assaulted. She was not physically touched. And in response to these allegations, the video was reviewed. A sexual assault requires touching? What law school assault requires touching? Excuse me? Did you say that? Did you say that assault requires touching? That's what you said, didn't you? I don't know about that. Ms. McAllister stated that there was a sexual assault on the bus. And there were threats and sexual harassment made on the bus. You said because they were verbal, there couldn't be assaults? That's what you said, didn't you? That was not what I intended, Your Honor. That's what you said, though. And that's not the law. Argue the law counsel and argue the facts and argue the pleadings. There was no clearly established law at the time in August of 2021 that would have informed these school individuals that they would have been violating a constitutional right to familial privacy or the upbringing of one's child by failing to inform the parent that the— It's not just—you keep going back. This is not about information. We're talking about a tender-aged child. We're not fighting over information now. We're fighting over we, in terms of this case, whether or not a child is going to be protected from sexual assaults. And you send them into the boy's bathroom. Forget about the information. For example, what if she was— No, this is a hypothetical, obviously. Child is pregnant. Says, I don't want my parent to know about it. But in school, you see that she has profound bleeding, all times a problem. And you do nothing about it. And you said, well, we didn't do anything because she said she didn't want her parents to know that she was pregnant. Do you think that would be the law? You could just say, yeah, I know she was hemorrhaging and told us things like that. There were all kinds of situations. But we couldn't tell that because that would be informing her parent that she's pregnant. Do you think that would be the law? Those aren't the facts of this case, Your Honor. No, wait a minute. I know they're not the facts because hypotheticals seldom are. They wouldn't be hypothetical. Correct, Your Honor. And someone bleeding obviously implicates major health concerns. Somebody being assaulted is not? Someone being assaulted is not? Ms. Blair was informed. A lot of times more people die from assaults and gunfire and all those kinds of issues than being beaten than they do from people dying from natural causes. Ms. Blair was informed that there was an incident on the bus, and she picked up her student from the school. A sexual incident. And there were no further incidents reported until we get to August the 24th, and the student informs the counselor that there had been issues with harassment in the bathrooms. And they again reviewed video footage and met with the student. The issue is whether it was clearly established that this would violate constitutional rights, and the right here. What about Title IX? Title IX has to do with deliberate indifference and whether the response was clearly unreasonable. We have a report of an incident on the bus. It is investigated. The student is picked up from school. There's no allegation that there were further incidents on the bus. In Title IX, the Davis case, the standard is one of deliberate indifference. Yes, Your Honor. It's not a negligent standard or whatever. Correct. And the record is replete with efforts that the school board and Olson took positive steps to try to resolve the situation, talking about, talking to the victim, talking to the alleged, to those who allegedly harassed the victim. It wasn't the fact that there's simply no evidence here that the school board sat on its hands. And the Davis case makes clear that the standard for student-on-student harassment is a deliberate indifference standard, and it's a high bar to meet. Yes, Your Honor. And each time the school officials were informed of an incident involving the student, they took action to address those incidents. Well, let me ask you, on the Title IX, though, the school board has an internal policy that these things are supposed to be reported to the Title IX coordinator, and I don't think that you all dispute. That is one of the things that is alleged here. I don't think you all dispute that the Title IX coordinator was not notified of the incidents that were going on here. So would that be deliberate indifference? It is not. And the case law says, Your Honor, that failure to follow your own internal policies does not rise to the level of deliberate indifference. It's what you look at the response, and there was a response. There was investigation. There was an attempt to figure out what was happening and to address it, and the student ran away before the bathroom incidents could be fully addressed. She ran away the same day that they were notified and met about those incidents. So we would argue that there was no deliberate indifference and the response was not clearly unreasonable as a matter of law. And how do we know that? What Judge Wilkerson just related to in terms of their attempts, is that from your pleadings? That's from the complaint here. It alleges that Ms. Olsen reviewed the bus video, met with the student, interviewed students who were on the bus, and then had Ms. Blair pick up her child from school to avoid riding the bus, and then again that there were investigations and review of video when the bathroom incidents came to light. So that's all in the complaint itself. So on its face, the complaint pleads that the school board took action such that it was not deliberately indifferent to the allegations. The action it took was to tell her to use the boys' bathroom. No, Your Honor. It wasn't? When the school learned that there was an incident with using the bathroom, they directed her to use the nurse's restroom. No, no, no. I'm talking before that. They told her to use the boys' bathroom. That is the allegation in the complaint, is that after the incidents on the bus. They were aware that she had been sexually assaulted on the bus. They were aware that there were incidents on the bus, Your Honor. Sexually assaulted. Yes? There were statements made to her of a sexual nature, yes. Yes, and there were sexual assaults, right? I think I understand the court's position on sexual assault. In terms of Title IX, we have cases where people who are college students. We're talking about a 14-year-old. College students who are women, athletes, for example, in situations that are uncomfortable situations. I remember cases where being alone in a room with a coach and all those things like that. There are all kinds of protections in Title IX. You're talking about now a 14-year-old child that you knew that had sexual assault, history and mental problems, and we're saying as a matter of law at this point that that's not deliberate indifference. That's different. There's no discovery in this case. All of these things like that, the board's responsibility, not bringing in a coordinator. We don't know why. It seems like this case was in a bucket. This is a case dealing with a person who identified transgender, and then there's a whole set. But the law protects children. The Latin is in loco parentis, right? Therefore, you stand in the place of the parent, and that's a protecting parent, not someone who just leaves it to the situation for a 14-year-old that you know has a problem. This is cases. If this is the law, then once a person identifies as transgender, you could just do anything. As Judge Wilkinson pointed out, the school board and school officials are in a very difficult situation. They're trying to walk this line. They're trying to protect their student who has identified a protected class, and they have to be careful about discriminating against that protected class. And so they do the best they can. They're doing the best they can. How do we know that? See, you're saying they're doing the best they can. That's what I don't understand. Where are you getting these facts from? That's based on facts. It's based on the allegations in the complaint, Your Honor. What allegations in the complaint is that you knew this person before, and you knew they were sexually assaulted, and you got the police involved? Why don't you call the police? The allegations at the school resource officer who's assigned to the school met with the student. Why was he involved? Or she? Well, there were allegations of harassment in the restroom. They reviewed the video. So it was okay to let him know, right? Him or her, I don't know. It's a school official. They're dealing with a school issue, and then they let the mother know. They let her know. By the time that the student runs away, the mother knows everything the school knows, and yet seeks to blame the school division. That's after the bathroom and everything, right? But this complaint is based on I have a right to know what's going on with my student at school. That is how the complaint was pled. So this is about information and whether the parent is entitled. She also has a Title IX. That also has a Title IX. She does. Which I think, I mean, I'm curious to know what your thoughts are as to how this case relates to the, what is it, the feminist case?  The Hurley case. How is this case any different than that where this court said that, you know, I think there they had the police escort the young ladies. I think they had these listening sessions, and then they sent out a generic e-mail. How is this any different? Because I think what the court looked at there was that the action was taken pretty generally, and so her allegations is this is the same thing here where these general, there's nothing that's done affirmatively to protect the child. So in Hurley the allegations were that the actions taken didn't cease the harassment. Here we have a discrete incident on the bus. Actions were taken. There's no allegations that any further harassment occurred on the bus. No one knows anything for two weeks. We learn about the incidents in the bathroom. We meet with the student. We say use the nurse's restroom. We start the investigation, and then the student leaves. She runs away. I thought they went further in this case and that Olson contacted Blair. Yes. He said pick up SB from school, and then she shared with Blair what had occurred and said you may want to pick up the child from school to avoid repetition, but that wasn't all they did. They didn't just sit back. They discussed the incident with SB, and this is drawn from the complaint. From the complaint, Your Honor, yes. We're not going outside the complaint. They discussed the incident with SB. The very next day they reviewed the bus film. The two students who were on the bus and alleged to have harassed SB, they talked with them, and they contacted the mother and said pick up. You may want to pick up your child. This is what's happening. So if these were sort of just far-fetched allegations, that would be one thing, but these are drawn from allegations in the complaint, what the school district did. Whatever you can say, well, this didn't work or whatever. We don't know whether it worked or whether it didn't work, but it was not deliberate indifference. How can it be deliberate indifference when you interview not only SB, but you contact Blair, you review the film, you talk to other students who were on the bus? That is not deliberate indifference. Deliberate indifference means you turn your eyes and turn your head the other way. They didn't. They dealt with the issue. You may disagree with it. You may disagree with the way that they dealt with it, but they were not deliberately indifferent to this child. I agree, Your Honor, and I see my time has expired, so I'll let my colleague, Mr. Butts, continue. If my friend and colleague has some further questions. No further questions for you. Thank you, Your Honors. No questions. Thank you. Good morning. May it please the Court. I'm Andy Butts, and with me today is Patrick Crowley, and we represent an individual in this case, Avery Villa. Mr. Villa was a psychology counselor. He was employed by a private agency, but he was under contract to the school board, and he was in a school, this school or another school, every day. So he was a borrowed servant. Now, I think under the civil rights laws, there's no need to establish employee relationships, but it's an important point because he was there just to provide psychological counseling as opposed to providing guidance counseling or make arrangements for the students. And in the time frame that took place here, all that happened was the following. First off, Ms. Olsen, the guidance counselor, invited Mr. Villa to a meeting with SB. That was the August 12th meeting, and that was a meeting where the bus incident was disclosed. Next, at that meeting, SB did tell them that she wanted to be treated as transgender with regard to the male name and pronouns. She didn't want her parents to know, but she also reported that she had been harassed on the bus. So I understand fully and agree with where the Court is coming from. There's something about this case that's not quite congruent, but I think there are more dimensions than I've heard talked about today. Now, Mr. Villa was not involved in the bathroom assignment, and there's no allegation in the complaint that he was. And by the way, this is a verified complaint, so at least for some purposes, the Court, I think, has a right to consider that those allegations in the complaint that are favorable to a particular individual, like Mr. Villa, are admissions. It may be a fine point in the law, but I think it's important because Mr. Villa is only there to provide counseling, and he met only a few times with the student with Ms. Olsen. I think there's a report of seven or eight meetings with Ms. Olsen. He wasn't there most of the time, but he also was there the day that she reported the bathroom incident. So he's aware of it, but he didn't make the decision, and after that meeting, he had no further contact. It is true he did not contact the parents, and to the extent that he had a decision about that, there's no allegation in the record one way or the other as to whether he should have and why. The second thing that's really important is to understand the context. This occurred in the fall of 2021, and at that time, unfortunately, the school board had not taken any steps to announce or develop any regulations. But things were going forward in Virginia to make that happen. The Grimm decision, the last decision of this court, was issued in 2020, which the judge who wrote that opinion said a very hopeful, almost wishful closing in his argument. He said, I think the children of this country, children of this state, can get together and work better, and the parents shouldn't meddle too much. Well, that assumption assumes a lot of things, including what parents, what part of the state, what's the culture, and that sort of thing. Second, in 2020, the legislature passed a statute that was intended to advance pro-gender rights. And then finally, in 2021, in the spring, the Virginia Department of Education issued guidelines, proposed model guidelines that were sent to all the school boards around the state. What guidelines can do is they can inform the community about what the standards are. If those guidelines had been issued, I think the veto gave the counties a whole year to get theirs in place, we might have had a better situation. It might well have resulted in a situation where parents of a child like SB and parents of young boys might have known that this was something they were going to have to cope with nonviolently. Thank you, counsel. Okay, thank you. You have some rebuttal time, Ms. McAllister. Yes, your honor. Thank you. Just a few things. As Judge Gregory has mentioned, of course, this is not merely the substantive due process claim for Mrs. Blair, but this is also the Title IX claim for Sage. And there are many . . . the biggest problem here . . . Show me in your complaint where you allege deliberate indifference on a Title IX claim. Okay. The fact that they . . . well, the fact that in response to Sage's allegations, there are no facts saying that the school did anything regarding the boys who did this. There are no facts in the complaint. We don't know. We need discovery to find out whether, in fact, there were any actions taken against these boys, whether they were even questioned. We don't have that information yet because this is a 12b-6. We don't have discovery. Well, you know that they interviewed the boys. We don't have that in the pleadings, your honor. Yeah, that's what I was thinking too. Where is that in the pleadings? No, we don't have . . . we have not pleaded that. We don't have . . . in fact, Judge Moon commented on that. Judge Moon said there are no allegations regarding any consequences or anything regarding the boys. We're trying this case at the Court of Appeals. And, yes, exactly. And we need . . . this Court needs to send it back and let us develop these facts so that we can properly address Judge Wilkinson's concerns and Judge Gregory's concerns. And as far as the deliberate indifference, again, Sage was using the boys' restroom, and at the time they knew that she had already been sexually harassed on the bus. They continued to let her use the boys' bathroom for two weeks. Finally, after two weeks, after parents finally . . . We hear from our kids that there's a problem. This is my concern because what you've been over is that you're saying, well, they did this when they should have done this, and they did this when they should have done that. And the complaints here seems to be with the way that you disagree with the way that the school board responded. But there's no contention that the school board just let it lie around and did nothing. There are . . . the complaints here are that they did A instead of B and B instead of C, and that's . . . you know, that's not deliberate indifference. And the Davis decision says that these claims should be few and far between. Yes, Your Honor, my time has expired. May I respond? Certainly. Yes, the deliberate indifference also deals with the fact that . . . Well, and we have the Hurley case. In the Hurley case, as court said, it's not enough to just do something, but you have to do . . . to take action that prevents further incidences from occurring. There's no evidence they did that. They took some action. What other instances of recurring is there? You just said you have to do something to prevent incidents from recurring. What other incidents were there that recurred? Well, we know that she had . . . she was continuing to be assaulted in the restroom. We don't know . . . again, we haven't had discovery, so all we . . . We don't know the extent of those. We don't know the extent of the knowledge. Maybe the school board, maybe the superintendent, maybe the counselor knew that, but we don't have that information because we haven't been able to obtain it through discovery. So we're asking this court to just send this back and let us have the discovery, let us find out the answers to these questions, and then there'll be a better ability . . . Well, no, the school . . . well, Your Honor, the allegations of the complaint came after the school board did or didn't do anything. We don't know. Your complaint says on page 79 in Title IX, officials and authorities failed to take measures in response to student . . . on student sexual harassment. You talk about the counselor, and acted with deliberate indifference. Yes. There was severe . . . that's what you allege. And so I guess now we turn on his head that we don't take from those pleadings the inferences drawn on those that . . . Yes, Your Honor. But we devise ourselves here at the court, appellate court. Yes, Your Honor. All right. That's all I have. Thank you, Your Honors. Thank you. We'll come down, and we'll greet counsel, and we'll move into our second case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, DeAndrea Gist Benjamin